**NO. 12-1461**

**IN THE UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT**

---

**UNITED STATES OF AMERICA,**

APPELLEE,

V.

**TAREK MEHANNA,**

DEFENDANT-APPELLANT.

---

**ON APPEAL FROM A JUDGMENT OF THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF MASSACHUSETTS**

---

# PETITION OF DEFENDANT-APPELLANT TAREK MEHANNA FOR PANEL REHEARING OR REHEARING EN BANC

Sabin Willett, No. 18725
Susan Baker Manning, No. 1152545
Julie Silva Palmer, No. 1140407
**BINGHAM McCUTCHEN LLP**
One Federal Street
Boston, Massachusetts 02110-1726
617.951.8000
sabin.willett@bingham.com

J. W. Carney, Jr., No. 40016
**CARNEY & BASSIL**
20 Park Plaza, Suite 1405
Boston, Massachusetts 02116
617.338.5566
jcarney@CarneyBassil.com

## I. RULE 35(B)(1) STATEMENT

As of November 13, 2013, in a terrorism prosecution of a citizen, the law of the Circuit is that the First Amendment protects only the speech that a jury decides it protects. To find that speech criminal, the same jury may be offered hearsay and inflamed by deeply prejudicial accounts of the defendant's unpopular viewing habits and points of view. Henceforth the government may mitigate the uncertainties of a disputed factual prosecution with an assault upon a point of view.

This is the effect of the panel's decision in *United States v. Mehanna*. That effect proceeds from the government's intentional conflation of speech with non-speech "clusters of activities" (as the panel accurately called them[1]), and the panel's erroneous use of sufficiency review. The decision therefore conflicts with decisions of the United States Supreme Court in *Holder v. Humanitarian Law Project*, 130 S. Ct. 2705 (2010) ("*HLP*"); *Stromberg v. California*, 283 U.S. 359 (1931); and *Yates v. United States*, 354 U.S. 298 (1957),[2] and of this Court in *United States v. Dellosantos*, 649 F.3d 109 (1st Cir. 2011) and *United States v. Boots*, 80 F.3d 580 (1st Cir. 1996).[3] Mehanna requests reconsideration by the

---

[1] Slip op. at 5.

[2] *Overruled on other grounds by Burks v. United States*, 437 U.S. 1 (1978).

[3] *Overruled on other grounds by Pasquantino v. United States*, 544 U.S. 349 (2005).

panel or consideration by the full Court to secure and maintain uniformity of the Court's decisions.

The appeal involves questions of exceptional importance. After *HLP*, trial courts need guidance in applying the material support statutes in First Amendment contexts. *See United States v. Scherrer*, 444 F.3d 91, 92 (1st Cir. 2006).

## II. ARGUMENT

At the center of the appeal lie Counts I-III, the material support counts under 18 U.S.C. §§ 2339A and 2339B. Slip op. at 4. To sustain convictions on these counts, the government offered "two separate clusters of activities," *id*. at 5. One was based on hotly-disputed evidence concerning the purpose of a brief round-trip to Yemen in 2004; the second, "translation-centric," focused on Mehanna's later translation of Arabic materials into English. *Id*. Instructed to return a general verdict, the jury may have convicted based on either cluster. Slip op. at 27-28.[4]

This raised the classic problem under *Stromberg*, Opening Br. at 68, but the panel sidestepped it, reasoning that each cluster of evidence presented only a *factual* dispute, and sufficiency of the first was enough. Slip op. at 29-30. The panel's theory was that the second cluster presented only the factual question of whether Mehanna's speech was "coordinated." This was a pivotal error, warranting reconsideration.

---

[4] Mehanna requested special questions. The trial court sustained the government's objection. App. 1893-1904, 192; Opening Br. at 6.

**A. Application of Sufficiency Analysis Was Error.**

*1. The Second Cluster Could Not Constitutionally Support a Conviction.* The panel did not address Mehanna's argument, *see* Opening Br. at 5-6; App. 115, 132, 181, 189, 1401, 1862-63, that the second cluster should not have reached the jury at all. As a matter of law it was legally impossible for the second cluster to support a criminal conviction. Congress has not criminalized "coordination" of material support. Section 2339B prohibits "knowingly *provid[ing]* material support or resources …." 18 U.S.C. §2339B (emphasis added). The word, "coordination," is a gloss, used by the Supreme Court to describe the provision of a specific type of *service* (one species of support), in specific circumstances absent from the record here: interactive training.[5]

In the statutes, Congress did not create, and in *HLP* the Supreme Court did not recognize, a jury question over "coordination" whenever the government's target uses the Internet to disseminate unpopular speech or associate with unsavory persons. It ruled narrowly: "We simply hold that, in prohibiting the *particular forms of support that plaintiffs seek to provide* to foreign terrorist groups, §2339B does not violate the freedom of speech." 130 S. Ct. at 2730 (emphasis added).

[5] For *speech* to constitute a "service" that may be criminalized, it must usually be undertaken at the *direction* of an FTO. *See, e.g., HLP*, 130 S. Ct. at 2710. In *HLP* the "service" was training. It is awkward to describe the trainer as "directed" by the trainee; the Court may have coined "coordination" as the marker of the necessary level of interaction that must be shown to make *speech* training a "service." In *Mehanna*, the government offered no evidence of training.



A/75853353.2

Those forms of support were direct provision of (benign) training. *Id*. at 2716; *see generally*, Opening Br. at 42-46; Reply Br. at 4-8. The Court held that Congress could constitutionally prohibit "*direct* training," and described this give-and-take activity as "coordinat[ed]" activity. *Id.* at 2729.[6]

*HLP* lends little guidance to the second cluster of evidence here, which involved neither training, nor the give-and-take *with an FTO* glossed as "coordination."[7] Point by point, Mehanna addressed the scant evidence offered, Reply Br. at 8-17, demonstrating that none of it showed direction, or even a material interchange with an FTO through intermediaries. The panel said nothing about how this record could ever be legally sufficient for criminal sanction. It did not explain why *Brandenburg v. Ohio*, 395 U.S. 444 (1969), does not insulate all of the expressions of moral support and point of view.[8]

The record showed Mehanna's vigorous presence on the Internet, with its geometrically-associative properties, and his frequent expressions of moral support, but *HLP* itself notes that rights of association are protected. 130 S. Ct. at 2730. By definition speech involves a speaker and a listener. Because both

[6] The only part of *HLP* analogous to *Mehanna* was the request to insulate political advocacy. The Court declined to rule on that request. 130 S. Ct. at 2729.

[7] The government conceded there was no direction. App. 1383 (Mehanna "was not instructed by al-Qaeda to engage in all these activities").

[8] In any prosecution involving speech, an appellate court must independently review the whole record and ensure that no aspect of the verdict trenches First Amendment rights. *Snyder v. Phelps*, 131 S. Ct. 1207, 1216 (2011).

direction and give-and-take were absent, there were no facts from which a jury could have found the direct interactive contact glossed as "coordination" and required to find in speech the unlawful provision of a service.

Mehanna did not translate anything at al-Qa'ida's request. He translated only one document at *anyone's* request, App. 453, six months *before* the government claims he learned that other users of the website where he posted translations were translating materials for al-Qa'ida. App. 765. The government argued that he received that notice via an email request to translate a video for al-Qa'ida, Gov't. Br. at 25-26, but Mehanna neither translated the video, nor responded to the email. Later Mehanna posted one translation, App. 309, 1059, but no evidence showed that he did so at anyone's request, *see* Reply Br. at 8-17, nor even that al-Qa'ida was aware that Mehanna's translations existed.

The government argued that Mehanna "collaborated" on the translation of a video. Gov't Br. at 25-26. This "collaboration" occurred in an instant message almost six months after an original query. App. 961. (Only the first email, which the government's evidence showed that Mehanna had forgotten six months later, suggested any link to al Qai'da. *Id*.) The "collaborator" asked if Mehanna had any ideas for an "intro." He replied, "how about some footage of tribesmen?" *Id*. That was insufficient as a matter of law. "'Material support' is a valuable resource by definition," *HLP*, 130 S. Ct. at 2725, and Mehanna's offhand comment

"provided" nothing of value "to" anybody. There was therefore no governmental interest to outweigh Mehanna's right to "say anything [he] wish[ed] on any topic," *id.* at 2722-23, and no record from which a reasonable jury could find the interactive conduct necessary to sustain a verdict under *HLP*. Yet through the general verdict, the jury was permitted to rest its verdict on this constitutionally protected activity.

The panel colorfully described the nettle of the case in its opening paragraph—the problem of determining when the government's interest in combatting terrorism gives way to the First Amendment's protection of deeply unpopular speech, but we respectfully submit that the decision never grasped that nettle. The panel never explained how the record could amount to more than the expression of unpopular ideas, *Snyder v. Phelps*, 131 S. Ct. 1207 (2011), or trifling electronic associations with allegedly shady characters, each of which is protected activity. *HLP*, 130 S. Ct. at 2730; *NAACP v. Claiborne Hardware Co.*, 458 U.S. 886, 908-09 (1982).

The panel's answer was to leave First Amendment protections to juries. This was the central error of the decision. Everything pivoted on it. The Bill of Rights is not administered by juries: it is a protection from them. The speech in this case was entitled to that protection for the reasons set out at 36-41 of the Opening Brief—arguments uncontradicted in the panel's decision.

*2. The Jury was Not Properly Instructed.* Even if the record *had* contained disputed evidence of the sort of give-and-take at play in *HLP*, the jury was not instructed to look for that give-and-take. It was instructed as to what coordination is *not* (independent advocacy), but never told what coordination *is*.[9] The jury was not tasked to require the government to show the nuts and bolts of direct interaction with an FTO.[10]

The panel found adequate the instruction that "independent advocacy for either an FTO or an FTO's goals does not amount to coordination." Slip op. at 23. That coordination *is not* independent advocacy does not mean that all non-"independent" speech *is* the unlawful provision of a material service. The instructions left the jury free to locate "coordination" in the inescapably associative nature of the Internet, and in mere moral support. The government closed by arguing that if Mehanna philosophically supported al-Qa'ida, it might convict. *See* App. 1954; Opening Br. at 43, 52. Given the First Amendment's protections for association, that was error.

Not only did the trial court fail to instruct the jury to look for purposive interaction, it provided no guidance on how *much* of it the government was obliged

---

[9] The relevant instructions are reproduced in the decision at 21-22.

[10] The "coordination" instruction was given with respect to counts 1-3, although counts 2 and 3 concern §2339A rather than the related statute at issue in *HLP*. Slip op. at 23 n. 6.

to prove. *Any* amount of whatever the jury deemed to be "coordination," no matter how infinitesimal, was permitted to trump First Amendment rights of speech and association. Yet quantum is an issue, too. Even where direction, or "coordination" is present, the "difficult question[] of exactly how much direction or coordination is necessary for an activity to constitute a 'service'" involved "'gradations of fact or charge [that] would make a difference as to criminal liability,' and so '*adjudication of the reach and constitutionality of the statute must await a concrete fact situation.*'"[11] *HLP*, 130 S. Ct. at 2722 (emphasis added) (internal citations omitted). "[T]his is not to say that any future applications of the material-support statute to speech or advocacy will survive First Amendment scrutiny." *Id.* at 2730.

The decision contradicted *HLP*'s guidance when it held that "[t]he [district] court appropriately treated the question of whether enough coordination existed to criminalize the defendant's translations as factbound and left that question to the jury." Slip op. at 24. If this were correct, then all future applications of the material-support statute to speech or advocacy *would* survive First Amendment

[11] Explaining its holding on the First Amendment challenge, the Supreme Court referred to its discussion of a vagueness challenge. *HLP*, 130 S. Ct. at 2729. That a person of ordinary intelligence would not understand that Mehanna's activities were subject to criminal liability as a "service" under the material support statutes, rendering the statute unconstitutionally vague, is an independent reason for reversal. *See id.* at 2722-23, 2720 ("the scope of the material-support statute may not be clear in every application"); Opening Br. at 47-48. The panel incorrectly ruled that this argument was "foreclosed by *HLP*." Slip op. at 32.

scrutiny, because they would all be up to juries. *HLP* instructs the opposite, noting the need for "adjudication of the reach and constitutionality of the statute," on specific factual records. *HLP*, 130 S. Ct. at 2722.

*3. Sufficiency Review was Error.* From the incorrect premise that the "second cluster" presented only a factual question, the panel proceeded to sufficiency analysis under *Griffin v. United States*, 502 U.S. 46 (1991), and concluded that the Yemen evidence was enough. Slip op. at 27-29. Mehanna has shown above that conviction under the second cluster would violate a constitutional right. And neither the panel nor the government quarreled with the rule that where a general verdict may rely on a constitutionally-defective alternative theory, reversal is required. *Bachellar v. Maryland*, 397 U.S. 564, 569-71 (1970); *Yates v. United States*, 354 U.S. at 312; *Stromberg v. California*, 283 U.S. at 367-68; *United States v. Boots*, 80 F.3d at 589; *see* Opening Br. at 69; Reply Br. at 1-2. Because the government's translation case against Mehanna was *legally* insufficient, the reviewing court may not assume that the jury adopted the Yemen cluster. Vacatur is warranted.

**B. The Panel's delegation of Constitutional Analysis to the Jury Elevated the Prejudice of Other Errors.**

Once sufficiency analysis was misapplied, the other errors came in a cascade, each further burdening Mehanna's First Amendment Rights.

1. *Hearsay*. The panel avoided the trial court's admission of the hearsay statements of "co-conspirators" under the same sufficiency approach. This error was crucial, because this hearsay provided the only link—indirect as it was[12]—between Mehanna's Internet activities and al-Qa'ida, and the government offered no independent evidence that any conspiracy existed between Mehanna and the declarants. App. 705, 765; *see* Opening Br. at 30; Reply Br. at 8-10; 18-20. The panel avoided "the substance of this objection," noting, "the relevance of the [website] evidence is limited to the translation theory of guilt. But [*Griffin* renders] that theory of guilt academic." Slip op. at 46.

The reasoning was circular in any event. Without a showing that the translations provided a service to an FTO—*i.e.*, the very link the government tried to proffer in the hearsay—the translation activities were constitutionally-protected

[12] The government offered two exhibits to demonstrate an al-Qa'ida link to the "translation-centric" cluster. App. 705, 961. Both were admitted under the co-conspirator exception to the hearsay rule. Reply Br. at 8-11. The first was an instant message in which Younis Tsouli wrote—but not to Mehanna—that al-Qa'ida requested the translation of a document. Tsouli was not mentioned in the indictment. App. 1-40. There was no evidence that anyone ever forwarded the request to Mehanna, nor that Mehanna ever responded to it, nor that Mehanna knew Tsouli, or ever met, communicated, or engaged in any plan with him, nor that anyone ever translated the document. Reply Br. at 9.

The second was an email to Mehanna requesting a translation for "the cloud people." App. 765. While Mehanna associated with the sender online, there was no evidence offered to show that the two were engaged in a conspiracy to provide translations or anything else to al-Qa'ida. Reply Br. at 10. Mehanna never responded to the request and did not translate the document. *See supra* at 5-6; Reply Br. at 10.

speech as a matter of law. The sufficiency doctrine could only be activated once the hearsay problem was confronted and overcome by some rule of evidence or other legal rationale. Sufficiency cannot be the reason that it is unnecessary to confront the error.

2. *Variance.* The panel's approach to the government's unified conspiracy theory contradicted Judge Torruella's decision in *Dellosantos,* and without citing the case. Mehanna argued that the government's theory of a single, overarching, ten-year conspiracy masked a stew of discussions and events, involving disparate things, some of which were not charged in the indictment. Opening Br. at 30-34; Reply Br. at 20-24.

The panel correctly identified as the only two relevant "clusters," Mehanna's travel to Yemen and the "translation-centric" material. Slip op. at 5. But without the analysis prescribed by *Dellosantos*, it then swept into one pot ten years of discussions between different people, having nothing to do with either Yemen or translation, but concerning different objects, persons, and times. The panel said each was similarly about "waging jihad against the United States," slip op. at 43, but Mehanna was not charged with conspiring to "wage jihad." The conspiracies charged and proved had to address the provision of material support alleged in the indictment.

For example, the government seasoned the pot with hair-raising testimony concerning young men discussing whether to attack a New Hampshire shopping mall. Slip op. at 42-43.[13] The indictment made no mention of these discussions. The idea shared neither a common goal nor interdependence of activities with the Yemen or translation material, factors under *Dellosantos* that support a single conspiracy. 649 F.3d at 117; Opening Br. at 31.

Admission of the shopping mall evidence forced Mehanna to defend against allegations of a conspiracy not noticed in the indictment, a variance requiring reversal. *Dellosantos*, 649 F.3d at 125. Also, "under the guise of its single conspiracy theory, the government subjected [Mehanna] to voluminous testimony relating to unconnected crimes in which [he] took no part. This situation created a pervasive risk of 'evidentiary spillover,' where the jury might have unfairly transferred to [Mehanna] the guilt relating to" those unconnected theories, another reason for reversal. *Id.*; *see* Opening Br. at 69-71.

The panel ruled that there was no prejudice in the "grand conspiracy" approach because there was "sufficient evidence to prove each of the conspiracies with which the defendant was charged." Slip op. at 30. This is a *non sequitur*. The proposition of *Dellosantos* is that otherwise probative—*i.e.* sufficient—

[13] A government witness, in undisputed testimony, testified that Mehanna opposed the idea. App. 1680-81.

evidence of involvement in a discrete conspiracy may be overwhelmed by material that impaired the jury's ability to fairly weigh whether the government proved that discrete involvement. Even where "evidence was arguably sufficient to support a finding that Defendant[] joined the second conspiracy," a defendant may be unfairly prejudiced. *Dellosantos*, 649 F.3d at 125.

3. *Unfairly Prejudicial Evidence.*

The panel thought the question whether the "extensive" inflammatory evidence admitted against Mehanna was unfairly prejudicial was "very close[]" and "fairly debatable." Slip op. at 50, 60. A close question may be harmless when evidence supported alternative, Constitutionally-appropriate factual theories. It is another thing to pass over "very close" questions of prejudice when the jury, not the trial judge, weighed the defendant's Constitutional right to speak, and may have rested criminal convictions on his exercise of that right. Indeed, much of the prejudicial evidence itself consisted of speech. Opening Br. at 36-41; Reply Br. at 4-8.

* * *

The problems run far deeper than technical rules about conspiracy or prejudicial material. This Court has always recognized that a special danger arises when the government uses the tools of conspiracy law to build a prosecution out of unpopular speech. *See generally United States v. Spock*, 416 F.2d 165 (1st Cir.

1969); Opening Br. at 24-26; Reply Br. at 23-24. This was the case that realized those dangers. Deploying conspiracy law allowed the government to infuse a factual contest over the "travel to Yemen" cluster with points of view, with hearsay statements of persons whose only confederacy was in visiting the same website, and with evidence outside the indictment. Mehanna's trial team had to respond not to discrete crimes based on identifiable clusters of activity, but in effect to a charge of unlawful state of mind. If all of this may be avoided by sufficiency review, then the searching appellate review guaranteed by *Snyder* in First Amendment cases is empty, and the government will be emboldened to wrap more prosecutions about disputed conduct in the gaudy packaging of unpopular speech.

## III. CONCLUSION

Grasping the nettle of this appeal is difficult. Surely no one is keen to revisit its vast record. But in the post-9/11, Internet age, the dilemma placed upon a free society by a material support prosecution for speech and Internet associations is

unusually significant. The technical and Constitutional issues presented by this record are subtle. For these reasons and those stated in the briefing, Mehanna respectfully requests either panel rehearing or rehearing *en banc*.

Respectfully submitted,

*/s/ Sabin Willett*

Sabin Willett, No. 18725
Susan Baker Manning, No. 1152545
Julie Silva Palmer, No. 1140407
**BINGHAM McCUTCHEN LLP**
One Federal Street
Boston, Massachusetts 02110-1726
617.951.8000

J. W. Carney, Jr., No. 40016
**CARNEY & BASSIL**
20 Park Plaza, Suite 1405
Boston, MA 02116
617.338.5566

**CERTIFICATE OF SERVICE**

I, Sabin Willett, certify that on December 6, 2013, the document filed through the ECF system will be sent electronically to the below registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants.

Mr. Tarek Mehanna
Registration number: 05315-748
CMU
FCI TERRE HAUTE
Federal correctional facility
P.O. BOX 33
Terry Haute, IN 47808

Dina Chaitowitz, Esq.
Chief of Appeals - Criminal
United States Attorney's Office
for the Dist. of Massachusetts
John J. Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

Liza Collery, Esq.
Jeffrey D. Groharing
United States Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530

Aloke Chakravarty, Esq.
United States Attorney's Office
for the Dist. of Massachusetts
John J. Moakley Federal Courthouse
1 Courthouse Way, Suite 9200
Boston, MA 02110

/s/ *Sabin Willett*
Sabin Willett, Esq.
Bingham McCutchen LLP
One Federal Street
Boston, Massachusetts 02110-1726
Telephone: 617-951-8000